Good morning, you may be seated. This is our third case of the day, 4-13-0222. People of the State of Illinois v. Gregory Scott. Attorney McCoy is here on behalf of the appellants. Attorney McNeil is here on behalf of the appellee. We have an empty chair over here next to me because Justice Appleton is ill today, but he will be listening to the oral arguments on the audio recording. Alright, Mr. McCoy, are you ready to proceed? Sure. May it please the Court, Counsel. My name is Christopher McCoy from the office of the State Appellate Defender, and I represent Gregory Scott. Mr. Scott was convicted of two counts of delivery of a controlled substance and sentenced to two concurrent 13-year prison terms. There are two issues presented to this Court on appeal. The first one involves other crimes evidence that was included in the interrogation video, and the second concerns whether the trial judge considered improper, aggravating factors at sentencing. Today I'd actually like to take those arguments in reverse order and begin with the sentencing issue. Here, the trial judge considered two improper, aggravating factors at the sentencing hearing. The first one was compensation, which was an inherent element in the offense. As the State acknowledges in its briefs, this consideration of this inherent element was improper. The second improper consideration was that the judge based his sentence on his own personal sentencing policy, which was that a defendant who had previously served a prison term would not receive the minimum sentence. However, the legislature has not said that the minimum sentence is reserved only for defendants that have not been to DOC. In fact, nowhere in the code is the minimum sentence so confined. As a result, the judge's statements were not simply about why Mr. Scott did not get the minimum sentence, but revealed a policy in which a certain class of defendants was basically not eligible to receive the minimum sentence. This was especially problematic here, where the minimum sentence had already been increased from a Class II offense to the Class X range of sentencing based on the mandatory Class X sentencing provisions. And in fact, anyone who had so qualified for Class X sentencing because of two prior Class II convictions most likely would have already served a prison sentence. So based on the trial judge's sentencing policy, it would be extremely difficult for any defendant in this class of offenders to receive the minimum sentence. And moreover, these improper factors cannot be just simply dismissed as insignificant. There were three factors that the judge explicitly referred to in his sentencing comments. Compensation, Mr. Scott's prior convictions, and deterrence. Two of these three were improper, or at least in the case of his prior convictions, were considered in an improper manner. And the court's own words demonstrate that he considered these factors and that the improper factors impacted the sentence. He said, and I quote, What was he eligible for? In terms of sentence? It was 6 to 30 was his sentence. 13. 13. Concurrent. Yes. On his 7th and 8th felony convictions. Yes. And. Sounds like it. Sounds like it. Well, it's near and dear. Well, the fact is this is a Class II sentence. He's sentenced to 13 years for, or excuse me, it's a Class II offense. Upgraded to a Class X sentence. Even in that Class X sentencing range, this is more than double the minimum sentence. If you look at his past convictions, his highest sentence that he's received in the past was five years. Less than half of that. Yes, but that automatically doesn't mean it can't be remanded for a new sentencing hearing. I think a similar example was the case of Abdelhadi, I believe I'm pronouncing that correct, where the court in that case said that the defendant received substantially less than the maximum sentence and still remanded the case for a new sentencing hearing. Why? Well. Thank you. In that case, the court looked at basically the two factors, whether there's any emphatic statements about, I guess the issue in that case to start with was a factor inherent in the offense, the harm that was done. So the court looked at if there's any emphatic or dismissive comments made by the trial judge in that case and then looked to see if, and looked at where the sentence fell in the sentencing range. That was a 10-year sentence, so it was four years over the minimum sentence. And the courts held that because it was over the minimum sentence and there was no comments either way, either emphatic about the improper factor or dismissive about the improper factor, this improper factor could not be deemed insignificant and as a result it needed to be remanded for a new trial. And that's the ultimate inquiry here is were these improper factors insignificant? And based on the sentence, which is twice the maximum sentence, and based on the fact that the court by its own words is saying this is why you're not, or this is why I'm not considering the minimum sentence, these factors cannot be deemed insignificant. And unless there's further questions on the sentencing portion, turning to the evidence regarding other crimes, there are three instances of inadmissible other crimes evidence in this video. The first was when Detective Brown said that Mr. Scott had previously sold drugs to the same informant and previously sold drugs in the same neighborhood. And the problem with this accusation is that there was no evidence to support it. To admit other crimes evidence, obviously the state needs to prove that the offense occurred or to show that the offense occurred and that the defendant committed it. Okay, let's go back. Sure. Your client didn't ask for the videotape to be redacted. So let's talk about William first. Sure. Why didn't he waive this? Because he actually agreed to the admission. Once he objected, he did object initially on the basis that he thought 17 hours of the video interrogation were missing. Right? Yes. He objected to the admission of the video. Now, obviously we acknowledge it's not the same basis that we are contesting here on review. So if this court deems that that's insufficient to preserve the issue, we would ask that it be considered under the closely balanced evidence problem. Right, that forfeiture issue. Yes. The forfeiture. Yes. Let's go back to William first. Sure. The state argues he's waived that argument. Well, if you look at his argument, as you pointed out, his argument was basically 17, the interrogation lasted 17 hours. The videotape that we have in this case is approximately 20 minutes. And the three statements we're contesting basically take approximately 50 seconds of the video. So if this less than one minute is removed from this 20-minute video, suddenly the jury is not going to think that 16 and a half hours are somehow missing. I mean, it doesn't really follow. I don't understand that. I don't understand what you're saying. Well, I guess the state's argument, as I interpret it, is, well, Mr. Scott argued this video was edited. So because he argued this video was edited, we should have been able to play the entire video and to show that it wasn't edited. But because of the time frames we're talking, the fact that he's arguing hours are missing and we're talking about redacting seconds less than a minute from the video, that doesn't suddenly... But you didn't ask him to redact it. No, he didn't. We acknowledge that. And again, we would argue it at least be reviewed under the plain error analysis, under the closely balanced evidence. And a similar example where an issue was not waived was People v. Moore. In that case, the defense counsel cross-examines the interrogating officer about whether or not a video was edited, whether or not the video was shown in the proper sequence. And still that, the Moore court held that these questions did not open the door to including other crimes evidence in a video of the defendant's interrogation. And in fact, the Moore court reversed because these instances of other crimes evidence were not included, or excuse me, were included, were not redacted from the video. And here we have three examples which should have been redacted. As I said, the first one was Detective Brown's statements about prior sales. As the state acknowledges in its brief, there is no concrete evidence of these prior sales, so the state did not meet its initial burden to admit this evidence. And also, these statements about prior sales cannot just be dismissed as a standard interrogation tactic. In fact, because the jury had no way to know that these statements were not true, or if they were true. And in fact, the state presented Detective Brown as a detective in the vice unit. Obviously, he was the detective in charge of these controlled buys that occurred in this case. So when he unequivocally said that these prior drug sales occurred, the jury would have every reason to believe that what he was saying was true. And as a result, they would not know that his statements in the video were, as the state terms it, an interrogation tactic. He confessed on the video, didn't he? He did. He did. And looking at the video, it could be viewed as a confession to what happened. It can also be viewed as Mr. Scott just telling the officer what the officer wanted to hear. Before he makes his admissions in the video, he repeatedly asks Detective Brown, what do you want from me? What are you trying to get out of this? And then they go on to talk about working as an informant, about getting a personal recognizance bond. So in that way, perhaps the confession isn't as damning as many confessions are. And we have then the second instance of other crimes evidence, which is when Mr. Scott admitted to smoking marijuana. Now, the state argues in its brief that this statement was not admitted to show Mr. Scott's propensity regarding cocaine. However, the other crimes rule is not so limited. Other crimes evidence is generally inadmissible, whether or not it's for the same crime that the defendant is presently charged with. So this statement as well constitutes inadmissible other crimes evidence. If this was a child custody hearing and somebody had a propensity to use marijuana and thereby neglect their children, it would be very interesting. In a criminal case of this sort, how damaging is it for a defendant to admit that he's used marijuana, that he smokes marijuana? It's not the most damaging thing here. That obviously goes to the weight and the harmlessness of the error. There are probably three people on the jury who have teenagers that have been caught with weed. Yes, but that was... I mean, in that theory, that's not necessarily the case. I'm trying to make a point. No, I understand. But that's obviously not the only thing that occurred here. I think the first statement is the most damaging, because it's the same offense, the same buyer, the same neighborhood, the same police officer who says he knows what all is going on. And just when it's then combined with this other statement about smoking marijuana and the final statement about the drug suppliers allegedly being involved in gang shootings, it adds to this picture of presenting Mr. Scott as a bad person and threatened to tip the scales against him. And the final thing I would have to say in terms of the harmlessness of the evidence was that the jury obviously didn't consider this to be overwhelming evidence. They deliberated for two days. They asked multiple questions, many of which were tied to Sergio Gloria, the informant in this case, who obviously had many credibility problems. And simply put, overwhelming evidence against a pro se defendant does not require two days of deliberation. Unless there are any further questions, Mr. Scott, we respectfully ask for this court to remand the case for a new trial or alternatively for a new sentencing hearing. Thank you. Thank you, Mr. McClellan. May it please the court. As for that first argument involving the video, we have to keep in mind that the trial court would have had to sua sponte redact any of these statements. Defendant did object, as counsel noted, to the video. However, his objection seemed to be a technical objection that this video was edited. And then after the trial court correctly found that it wasn't edited, the defendant said, well, let me look through it first before you show it. Of course, defendant's main theory throughout the whole trial was that he was interrogated for an unreasonably long amount of time, 17 hours. My presumption is that he interpreted the time stamp on the video from being minutes and seconds to actually being hours and minutes, which line up almost exactly the way defendant claims they would have been. However, this objection to it being edited is basically the opposite argument that defendant is arguing here on appeal. Just because defendant's initial objection concerned a video, that shouldn't preserve any argument concerning the video on appeal. That would be overly vague. And in fact, from a policy perspective, it would be beneficial to defendants to make their objections and post-trial motions as vague as possible at the trial level to thereby preserve however many avenues of attack on appeal concerning whatever their objections are about. This would obviously be a waste of judicial resources, and more importantly, would not give the trial court the less specific of an objection it is, the less specific the record is, and the less chance the trial court has to correct any error based on the objection. So this is clearly forfeited here. As Justice Pope mentioned, it's also waived. Defendant not only acquiesced to the video being played to the jury, defendant's theory at trial, it was almost necessary to play the video for the jury. Again, the only evidence that defendant leans on for the 17 hours is the time stamp in the video. He extensively cross-examines the interrogating officer about the time stamps in the video. So, of course, the video would need to be played. So this issue was invited by defendant, so it's waived as well as forfeited, and also it clearly doesn't rise to the level of plain error. The three specific instances are minor in the video, but more importantly, the minor minimal prejudice to defendant are the three specific instances counsel mentioned, but more importantly, the full video was highly probative to watch, for the jury to watch in its entirety. Again, the defendant's main theory was that this video was edited, that he was actually interrogated for over 17 hours. It was necessary for them to view the complete video to see if any fishiness, if any edits were in the video, or if they, from the state's perspective, to show that this was a complete, the full interrogation. Defendant counsel stated that taking a few seconds out of the video wouldn't matter when it's only 20 minutes long, or the redactions would be about 50 seconds. However, we know that the redaction would be 50 seconds. Any cut could be however long in the video when you show it to the jury. I mean, so this would, bearing in mind that this would be the trial court doing it on its own motion to make three minor cuts in this video would be, would lead to presumably jury confusion, because then it would inarguably be an edited video. Do you think accusing, you know, you've done this before and you've sold before, that's what you do in this neighborhood, that's pretty mild. Pretty mild, and clearly it wasn't a specific, in context, watching the video, this wasn't a specific, you would have to jump through a few logical hoops to, for a reasonable juror to think that this was a specific crime. This isn't the first time that you've sold drugs to that guy, and it's not the first time you've sold drugs to other people in that neighborhood. Correct. I mean, again, this wasn't confirmed by defendant or anything. It's on the video. Well, he says that, you know, I'm not really trying to get involved in this stuff. He says these guys brought it down and I'm supposed to take it to them, whatever that means. He's just a conduit. I'm not really a bad guy, I'm just a conduit. Again, it seems like a pretty standard flow of interrogation to me from the video. And again, looking at it in context of this was never, this other crime's evidence was never mentioned before this appeal. So the trial court would have had to, on its own motion, I mean, the trial court isn't obligated to make defendant's objections for him, even though he is pro se. So this clearly was not plain error, especially when the last note is that the jury was instructed with IPI criminal number 3.14. That instructs the jury to disregard any evidence of defendant's other crimes, except for the limited purpose it was received. People v. Carter, I cited in my brief, dealt with the same issue. It's well settled that the jury is presumed to follow the trial court's instructions. Here there's no indication or suggestion that they didn't follow the trial court's instructions. Counsel mentioned that the jury debated for a long time. None of those questions had anything to do with other crimes or anything like that. So clearly this was not plain error, especially when you consider that the trial court would have had to make these redactions sui sponte. And the defendant's main theory was that the video was edited and that he was actually interrogated for 17 hours. Even if it's not forfeited or waived, it's harmless error anyway. Why is that? Because the evidence against the defendant was overwhelming. As Justice Folk mentioned, he confessed three times in the video. It was a minimizing confession that he was a middle man or something like that, but it was a confession all the same three times. What's the third time? I think three times in the video he confessed to being the middle man on these transactions. Not three transactions. The buyer, the controlled buyer, testified that the defendant was the one who sold him the drugs. Multiple police witnesses identified the defendant, and perhaps most damning, the money, the recorded money, matching serial numbers, was found on the defendant's person when he was arrested. So there was clearly overwhelming evidence. Even if these three minimal redactions had occurred, there would be no different outcome in the proceedings. So even if it wasn't forfeited, any error was harmless. As for the second argument, this issue is also forfeited. The defendant conceded in his brief that the issue wasn't raised in a post-sentencing motion, therefore it's forfeited. This court, and Aylors and Rathbone both cited in my brief, stated that this kind of claim is precisely the kind of claim the forfeiture rule is intended to bar. Why is that? Because the trial court was never allowed to, these were remarks by the trial court, the improper aggravating factor or the personal policy as defendant calls it. If these were objected to, the trial court would have either corrected these problems, or we would have had a clear record on, hey, this is not obviously a rigid official policy that I sentence all defendants by. This was a personal remark kind of thing. So pursuant to Aylors and Rathbone both, this issue was forfeited. It also doesn't rise to the level of plain error. Looking at them both, the first improper allegation was that trial court stated with just defendant's lengthy criminal record, which it was very lengthy, quote, you ought and should know that we are not looking at the minimum that is going to be imposed because the minimum is basically reserved for individuals who either haven't been to the Department of Corrections in the past, and you have, or for that matter, that don't have as much of a previous criminal history as you do. The last part of that is the significant part here. Defendant argues this showed that judge had a personal policy of not giving the minimum sentence to a defendant who had been in prison before, but that's only half of his remark. It was an either or. Either haven't been in prison, or defendants that don't have as much of a previous criminal history as you do. Defendant did have eight. This was his seventh and eighth felony convictions. He'd been in prison three times already. Clearly, defendant, the trial court's remark was that this defendant would not be getting the minimum sentence based on his lengthy criminal record. It didn't reflect any rigid official policy in sentencing defendants, and it couldn't have. It was impossible to have because one of the qualifying factors was the minimum is basically reserved for those defendants that don't have as much of a previous criminal history as you do. This is obviously not a solid qualifier for minimum sentences, and in fact, presumably, this was the first time this trial judge had sentenced this defendant. How he could have an official policy that was dependent on Mr. Scott's previous criminal history in his years as a trial judge would be impossible. It would lead to absurd results. Taken literally, which defendant wants to do on this appeal, taken literally, this would be any defendant that didn't have eight felony convictions, which would presumably be most defendants overall. They'd be sentenced to the minimum. Also, the personal policy, like I said, would be dependent on this one defendant's criminal history. It doesn't make sense. As the Supreme Court stated in People v. Steppen, the fact that the sentencing judge added some personal observation before imposing sentence, well, not to be encouraged, is of no consequence. That's what happened here. This was a personal remark or an aside. This was not a rigid policy, and it's especially clear when you look at it in context and read the whole sentence by the trial court. The second contention is that the trial court took into account defendant got compensated. It's true that the trial court did list off the statutory factors. Compensation was one of them. That was the only time that compensation was mentioned when sentencing defendant. On the other hand, the trial court talked extensively about his lengthy criminal record and talked about it numerous times when sentencing defendant. People v. Schutz is one of this court's opinions. I cited it in my brief. In that case, the trial court only mentioned the compensation factor in passing when sentencing defendant and a number of other aggravating factors were found present and relied upon. Therefore, this court concluded in Schutz that the compensation factor didn't lead to a greater sentence and remand was not necessary. The same could be said here. Clearly, the defendant's sentence, which was on the lower range of even concurrent Class X sentencing, he only got sentenced 13 years, 7 above the minimum, but 17 below the maximum for, as Justice Kinnick noted, his seventh and eighth felonies. Clearly, this laundry list of whatever statutory aggravating factors applied here did not lead to a greater sentence and remand is not necessary, especially when you look at it from plain error analysis that this issue was never raised and was therefore forfeited. And if there are no questions... I have one question. Yes. Did you view the video? Yes. Did you have any trouble with it? No. I'm a Windows Media player. Okay. Thank you. Uh-huh. I'll play it to you every month. Okay. Regarding the issue of the interrogation video and whether that was invited error, Mr. Scott objected in the trial court, obviously on a different basis. The trial court overrules the objection. At that point, Mr. Scott can view the video, can use the video how he chooses. That alone did not invite this error or preclude this issue from being raised on appeal. And in fact, in his post-trial motion, he again objects that this video should not have been admitted. Second, regarding the jury instructions, which counsel mentioned in this case, and specifically the instruction concerning other crimes evidence, the jury was instructed that they could consider other crimes evidence on four limited purposes, that being intent, motive, design, and knowledge. However, none of those four applied, and the state has not contended that any of those four limited purposes apply here. So it's hard to see how this jury instruction could have made this issue or made this error harmless. And finally, turning to the sentencing issue, this is reviewable as plain error. We acknowledge that this was not included in the motion to reconsider a sentence, but it is reviewable as plain error under both prongs of the plain error analysis. First, under the closely balanced evidence prong, the evidence here threatened to tip the balance in favor of a higher sentence. And in fact, when you look at the court's own words and the fact that he says this is why a minimum sentence isn't being imposed in this case, clearly that shows a danger of a higher sentence. And second, it's also reviewable under the fundamental rights prong because this created an unfair sentencing hearing. When the judge is considering a different range of sentences than the legislature imposed, then surely that is not a fair sentencing hearing and it's not a sentencing hearing that Mr. Scott was due as a matter of law, unless there are further questions. Did you view the video? Yes. Did you have any trouble? I did at first. I, in fact, was not able to get it to play on Windows Media Player. Our IT department had to install a different type of media. It's a different stuff. Yeah. And I was able to get it to play and it matched up with the transcript in my estimate. Very well. Thank you. Thank you, counsel. We'll take this matter under advisement and be in recess.